UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROSA SEGUE, JOHN DOE/JANE DOE | CIVIL ACTION |
| VERSUS | NO. 07-5221 |
| STATE OF LOUISIANA, ET AL. | SECTION "N" (1) |

**ORDER AND REASONS**

Before the Court is the Motion to Dismiss and/or Motion for Summary Judgment for Lack of Standing and for Failure to State a Claim Upon Which Relief Can Be Granted (Rec. Doc. 13). Also before the Court is the issue of whether Plaintiffs' request for a three judge panel should be granted. The Court previously ordered the parties to submit briefing on this issue. (Rec. Doc. 10). After reviewing the Complaint, the memoranda of the parties, and the applicable law, the Court finds that Defendant's motion for summary judgment based on lack of standing should be granted. The Court further finds that even if Plaintiffs had standing, their request for a three judge panel should be denied.

**I. Background**

Plaintiffs filed suit pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, to enjoin Defendants from further implementation of certain components of the State's voter registration cancellation procedure, for which they assert proper preclearance by the U.S. Department of Justice was never obtained. Plaintiffs also seek an order compelling Defendants

to reinstate the voter registration of all individuals whose registration has been cancelled from the voter registration rolls[1], unless and until Defendants obtain a preclearance determination that the components of the program will not have the effect of denying the right to vote on account of race or color.

Specifically, Plaintiffs take issue with a procedure being used by Defendants for which Defendants are currently seeking preclearance. This procedure utilizes a 30-day pre-notice letter that is sent to Louisiana registered voters who are living in other states and who have registered to vote in other states. The purpose of this procedure is to prevent possible duplicates in Louisiana voter registration rolls and those of other states, i.e., to prevent one person from voting in two places by way of dual registration in separate states.

Louisiana law prohibits a citizen of this state from remaining registered to vote in more than once place of residence at one time. La. R.S. 18:101(B). To remedy this prohibition, Louisiana law allows for a 21-day notice, entitled "Letter of Irregularity", to be sent to Louisiana voters who are identified as possible out-of-state registrants. That law provides as follows:

> (1) If the registrar has reason to believe that the name of a person has been illegally or fraudulently placed upon the registration records or that a registrant no longer is qualified to be registered for a reason other than a change of residence or address, or that the registrant has deliberately given an incorrect address, he shall immediately notify the person. The notice shall be mailed first class, postage prepaid, to the address on file at the registrar's office.
>
> (2) The notice shall state the alleged irregularity in the registration and shall inform the person that he must appear in person at the office of the registrar of voters within twenty-one days after the date on which the notice was mailed to show cause why his name should not be removed.

[1] The urgency of this matter centers on the fact that the next election in Louisiana will be held on October 20, 2007.

> (3) If the registrant fails to appear within the required twenty-one days, the registrar shall cancel his name from the list of eligible voters. If the registrant appears and shows cause within the twenty-one days, the registrar shall not cancel the registration.
>
> (4) Records of such activity shall be maintained in accordance with the provisions provided in Subsection F of this Section.

La. R.S. 18:193(G). It is undisputed that the above law has been most recently precleared by the U.S. Department of Justice on September 20, 2004.

The 30-day notice, entitled "Letter of Intent to Challenge", instructs recipients that they have 30 days to provide proof of the cancellation of their out-of-state voter registration. The 30-day notice is *in addition to* the previously precleared 21-day notice. The 30-day notice goes beyond what is required by law and provides an additional, earlier notice period. In other words, Plaintiffs claim that their rights are being violated by a procedure that gives them ***more notice than is required by law*** before their voter registration is cancelled in Louisiana.

In the Complaint, the only identified plaintiff, Rosa Segue, claims to be an African American resident of Orleans Parish, Louisiana, who is temporarily living in Texas and has been since Hurricane Katrina. (Rec. Doc. 1, ¶ 7). She asserts that she received this 30-day notice, and then subsequently received a letter instructing her to appear at the Orleans Parish Registrar's office within 21 days and show cause why her Louisiana registration should not be cancelled. The Complaint states that Ms. Segue then "was removed from the state's voter rolls and is no longer deemed an eligible voter in the State of Louisiana."

In response to the Complaint and the request for a three judge panel included therein, the Court ordered the parties to submit briefing on the issue of whether a three judge panel is required and warranted in this matter. (Rec. Doc. 10). In addition to the memoranda the Court received from

the parties on that issue, Defendants Jay Dardenne and Angie LaPlace filed a Motion to Dismiss and/or Motion for Summary Judgment for Lack of Standing and for Failure to State a Claim Upon Which Relief Can be Granted (Rec. Doc. 13), which was opposed by Plaintiffs (Rec. Doc. 22). The Court addresses both the three judge panel issue and the motion to dismiss and/or motion for summary judgment in this opinion.

## II. Law and Analysis

### A. Standing

The standing doctrine is a threshold inquiry to adjudication , which defines and limits the role of the judiciary. *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 517-18, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). This inquiry has two components: (1) constitutional limits (the case-and-controversy clause in Article III of the Constitution) and (2) Court-crafted prudential limits. *Id.*, (citing *Raines v. Byrd*, 521 U.S. 811, 820, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)). "In both dimensions it is founded on concern about the proper-and properly limited-role of the courts in a democratic society." *Warth*, 422 U.S. at 498, 95 S.Ct. 2197.

Plaintiffs must establish that "their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable " *Id.* (citing *Raines*, 521 U.S. at 820, 117 S.Ct. 2312). As the Fifth Circuit recently found in *Doe v. Tangipahoa Parish School Bd.*, 494 F.3d 494 (5th Cir. 2007), a plaintiff's injury in fact must be particularized and is not properly asserted in the form of a general grievance claimed to have been experienced.[2] Defendants claim that Plaintiffs lack standing to bring the instant action because the only named plaintiff, Ms. Segue, is not an "aggrieved person" within

[2] The Court notes that Plaintiffs fail to cite, explain, distinguish, or even address the recent Doe decision rendered by the Fifth Circuit. The Doe opinion is binding precedent as it relates to the standing issue in this case.

the meaning of 42 U.S.C. § 1973a. Section 1973a provides standing to an "aggrieved person" who wishes to challenge a voting rights procedure.

The case or controversy requirement is the "'irreducible constitutional minimum' of standing." *Bennett v. Spear*, 520 U.S. 154, 162 (1997). To satisfy it requires: "(1) that the plaintiff have suffered an 'injury in fact' - an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of - the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 167. The party invoking federal jurisdiction - here, the plaintiffs - "bears the burden of establishing these elements," and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Defendants contend that Plaintiff Segue fails to meet the case or controversy requirement of Article III of the United States Constitution.

Here, even though Plaintiff Segue has alleged in her Complaint that she received the 21-day notice and was removed from Louisiana's voter registration rolls rendering her ineligible to vote in Louisiana (Complaint, Rec. Doc. 1), Defendants have come forward with proper summary judgment evidence to disprove that allegation. Specifically, Defendants have attached an affidavit from Sandra L. Wilson, the Registrar of Voters in Orleans Parish, Louisiana, which states the following: (1) Plaintiff Segue is currently a registered voter in Orleans Parish; (2) she was not removed from the state's voter registration rolls; and (3) she was not sent a notice requiring her to appear in person

at the Orleans Parish Registrar's Office to provide proof as to why her name should not be removed from the list of eligible voters in Orleans Parish, pursuant to La. R.S. 18:193.

In their opposition, Plaintiffs acknowledge their own misunderstanding of the facts and admit that Plaintiff Segue never received the 21-day notice and was never cancelled from Louisiana's voter registration rolls - despite the representations made to the contrary in the Complaint. (See Rec. Doc. 22, fn. 2). Plaintiffs contend that Plaintiff Segue received the 30-day notice, which instructed her to obtain a certified statement cancelling her out-of-state registration, which she claims she was unaware existed.[3] Plaintiff admits that the 30-day notice explained that if she did not provide it with the requested information, she would then receive a "second notification" (the 21-day notice), which would require her to appear in person to provide proof of why she should not be cancelled from the voter registration rolls in Louisiana. The notice instructed that only after either not appearing in person, or after appearing in person without sufficient proof, would a cancellation from Louisiana voter registration rolls occur. (See Exhibit A to Complaint, Rec. Doc. 1). While Plaintiff admits that she never received the 21-day notice, she claims that she reasonably (though erroneously) believed that her registration had been cancelled.

Based on this evidence (which is considered by this Court under the summary judgment standard established in Rule 56 of the Federal Rules of Civil Procedure), the Court finds that neither Plaintiff Segue nor any other plaintiff[4] has suffered an actual, particularized, and concrete injury in fact. The *only* notice Plaintiff received was the 30-day notice. This initial notice explained that,

[3] It was never confirmed, or denied, and is thus still not clear to the Court whether Plaintiff Segue was actually registered to vote out-of-state, but it is now undisputed that she was and is registered to vote in Louisiana.

[4] The other plaintiffs are simply hypothetical, unidentified "John Doe/Jane Doe" persons.

unless certain conditions were met relating to her obtaining proof that her out-of-state voter registration was cancelled, a second notice would be forthcoming, wherein she would be instructed to appear in person within 21 days to show cause why her Louisiana registration should not be cancelled. The 30-day notice Plaintiff received further explained that she would be cancelled from Louisiana's voter registration rolls only after failing to sufficiently respond to the *second* notice. She admittedly never received the second, 21-day notice and was never cancelled from the Louisiana voter registration rolls. Plaintiff has suffered no actual injury; she did not have to appear and show cause; and she remains registered to vote in Louisiana. Further, the Court finds that, based on the clear wording of the 30-day notice Plaintiff received, her belief that she was cancelled from Louisiana's voter registration rolls was not reasonable. Because Plaintiffs lack standing, this Court lacks the requisite jurisdiction to hear this matter, which must be dismissed for the reasons stated above.

However, even if Plaintiffs did have standing or even if the Complaint was amended to add a Plaintiff who actually did suffer an injury in fact, i.e., cancellation of his/her voter registration, Plaintiffs' request for a three judge panel would still be denied. Plaintiffs' claims are wholly insubstantial and completely without merit for the reasons stated hereinafter.

**B. Request for Three Judge Panel**

Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, governs changes in voting procedures by covered jurisdictions. *Lopez v. Monterey County*, 519 U.S. 9, 11, 117 S.Ct. 340, 343, 136 L.Ed.2d 273 (1996). Section 5 is designed to prevent covered jurisdictions from enacting or administering changes in voting procedures that have a discriminatory purpose or effect. *Id.* It applies to any attempt by a covered jurisdiction to enact or administer such a change in voting practice or

procedure that is different from that in force on the date of the commencement of Section 5 coverage. *Id.* at 19, 117 S.Ct. at 346-47. Section 5 "freez[es] election procedures in the covered areas unless the changes can be shown to be nondiscriminatory." *Landry v. City of Kenner*, 2004 WL 97704, *2 (E.D. La. Jan. 20., 2004) (citing *Reno v. Bossier Parish School Bd.*, 520 U.S. 471, 477, 117 S.Ct. 1491, 1497, 137 L.Ed.2d 730 (1997)). Although Section 5 applies only to certain states and their political subdivisions, Louisiana and its political subdivisions have been subject to the provisions of Section 5 since November 1, 1964. *Id.*, 28 C.F.R. app. § 51.

A covered jurisdiction may not implement any change without administrative preclearance by the Attorney General of the United States, or judicial preclearance by the United States District Court for the District of Columbia. 28 U.S.C. § 1973c; *Reno*, 520 U.S. at 477-78, 117 S.Ct. at 1497. No new voting practice or procedure is enforceable unless preclearance has been previously granted. *Lopez*, 519 U.S. at 20, 117 S.Ct. at 347. If a voting change subject to Section 5 has not been precleared, a private plaintiff is entitled to an injunction barring the implementation of such a change. *Id.* However, "once a covered jurisdiction has complied with these preclearance requirements, section 5 provides no further remedy." *Id.* at 23, 117 S.Ct. at 348.

The issue of whether the Section 5 preclearance requirements have been met must be resolved by a three judge panel. 28 U.S.C. § 1973c; *United States v. Saint Landry Parish School Bd.*, 601 F.2d 859, 862-63 (5th Cir.1979). However, under 28 U.S.C. § 2284(b)(1), the single-judge district court to whom the three judge panel request is made has the authority to determine if such a panel is required. *Saint Landry*, 601 F.2d at 863. Such a panel is not required if a plaintiff's

Section 5 claim is "wholly insubstantial or completely without merit."[5] *Id.* The Fifth Circuit has explained that"[o]ne would not normally conclude that a state 'enacts or administers' a new voting procedure every time a state official deviates from the state's required procedures." *Id.* at 864. "We do not mean to intimate that state officials are free to violate approved state procedures and conduct in an election in a discriminatory manner." *Id.* "All we are saying is that this abuse is not one that Section 5 was designed to alleviate." *Id.*

Even if the Court were to find that preclearance was not obtained for certain aspects of the process, the only provisions that would be enjoined would be those provisions that had not been precleared. In other words, the Court would not enjoin the utilization of the precleared 21-day notice and the subsequent registration cancellations based on non-conformity therewith, as set forth in La. R.S. 18:193. If the Court enjoined Defendants from engaging in the un-precleared methods relative to the 30-day notice, Plaintiffs would only receive one notice before being cancelled from the voter registration rolls, instead of two. Nothing else would change. With or without the 30-day notice, individuals who fail to meet the conditions set forth in the 21-day notice are removed from Louisiana's voter registration rolls.

---

[5] It should also be noted that the United States Supreme Court has held that congressional enactments which provide for convening three judge panels should be strictly construed:

> Convening a three-judge court places a burden on our federal court system, and may often result in a delay in a matter needing swift initial adjudication.... Also, a direct appeal may be taken from a three-judge court to this court, thus depriving us of the wise and often crucial adjudications of the courts of appeal. Thus we have been reluctant to extend the range of cases necessitating the convening of three-judge courts.

*Allen v. State Board of Elections*, 393 U.S. 544, 561-62, 89 S.Ct. 817, 829-30, 22 L.Ed.2d 1 (1969) (citations omitted).

Section 5 is designed to prevent implementation of discriminatory voting practices. It "freezes" election procedures in the covered areas unless those changes can be shown to be nondiscriminatory. See *Landry*, 2004 WL 97704, at *2 (citing *Reno*, 520 U.S. at 477). The Fifth Circuit has held that Section 5 is not invoked every time a state official deviates from the state's required procedures as was the case here when the Secretary of State tried to afford more protection to Louisiana registered voters by giving them *more* notice (30 more days, to be exact) than the law requires. This 30-day notice was sent in an attempt to provide an *extra* step and additional protection to individuals who, by law, are only are legally entitled and required to receive a 21-day notice before they are cancelled from the voter registration rolls. As Defendants assert, the 30-day notice did not have the effect of terminating any individuals from the voter registration rolls. The only voter registration cancellations resulted from the precleared 21-day statutory notice. Thus, the Court concludes that the 30-day pre-notification procedure used was (and is) non-discriminatory in that it had (and has) no discriminatory effect. Lastly, even if an individual is mistakenly terminated from the voter registration rolls pursuant to the precleared 21-day notice, the State provides a pre-approved procedure for reinstatement. La. R.S. 18:193(H). It therefore appears that Plaintiffs' Section 5 claim is "wholly insubstantial and completely without merit."

**III. Conclusion**

This Court lacks jurisdiction to hear this matter as Plaintiffs lack standing. The only identified plaintiff, Ms. Segue, has suffered no actual injury and remains registered to vote in Louisiana. However, even if Plaintiffs did have standing or even if the Complaint was amended to add a plaintiff who actually did suffer an actual injury in fact, there would be no need to convene a three judge panel. The 30-day pre-notification letter did not have the effect of terminating any

individuals from the voter registration rolls. It was, instead, sent only to provide an *extra* step and additional protection to individuals who, by law, are only are legally entitled and required to receive a 21-day notice before they are cancelled from the voter registration rolls. Thus, Plaintiffs' claims are wholly insubstantial and completely without merit. Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss and/or Motion for Summary Judgment for Lack of Standing and for Failure to State a Claim Upon Which Relief Can Be Granted (Rec. Doc. 13)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' request that a three judge panel be convened to preside over their claim arising under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, is **DENIED**.

New Orleans, Louisiana, this 3rd day of October, 2007.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**